[Cite as *State v. Hannah*, 2015-Ohio-4964.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 15AP-212 |
| v. | : | (C.P.C. No. 14CR-5050) |
| Eric D. Hannah, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 1, 2015

*Ron O'Brien*, Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee.

*Yeura R. Venters*, Public Defender, and *David L. Strait*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Defendant-appellant, Eric D. Hannah, appeals from a judgment of the Franklin County Court of Common Pleas, convicting him of two counts of drug possession in violation of R.C. 2925.11. For the reasons that follow, we affirm.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On May 20, 2014, Columbus police officers Christopher Hostettler and his partner were dispatched to the area of Bartham Avenue and South Ninth Street to investigate a suspicious vehicle. On that date, both Hostettler and his partner were working as uniformed patrol officers in the south end of Columbus and driving a marked "paddy wagon." (Jan. 20, 2015 Tr. 23.) Hostettler described the paddy wagon as being a little larger than a typical minivan.

{¶ 3}   As Hostettler drove the paddy wagon into an alley between Ninth Street and Hinkle Avenue, heading east, he observed appellant walking in the alley, heading west. The time was approximately 1:18 a.m.  Hostettler was familiar with appellant from prior encounters, and he knew that appellant lived in the neighborhood.  During these prior encounters with appellant, appellant had admitted to Hostettler that he was addicted to heroin.  According to Hostettler, he had asked appellant for consent to search his person on three or four prior occasions and that appellant always consented.  Hostettler related that he had found "contraband" on appellant in the past.  (Jan. 20, 2015 Tr. 35.)

{¶ 4}   On this occasion, Hostettler stopped the paddy wagon in the alley as appellant approached the vehicle on the driver's side.  Hostettler rolled down his driver's side window and asked appellant what he was up to.  Appellant responded that he had been at the nearby Parsons Market located on Parsons Avenue.  Hostettler knew that Parsons Market closed at 12:00 a.m., and he suspected that appellant might have been at a drug house.  At that point, Hostettler exited the vehicle and asked appellant if he minded if Hostettler searched him.  According to Hostettler, appellant raised both of his hands in the air and responded, "No, go ahead."  (Jan. 20, 2015 Tr. 14.)

{¶ 5}   Before conducting the search, Hostettler placed appellant's hands behind his back and asked appellant "if he had any thing sharp that might stick me."  (Jan. 20, 2015 Tr. 14.)  Appellant informed Hostettler that "he had some needles on him."  (Jan. 20, 2015 Tr. 14.)   Hostettler proceeded to search appellant, and in one of his pockets Hostettler found a pouch containing several needles "and one of them was loaded with a dark-colored liquid which we believed to be heroin."  (Jan. 20, 2015 Tr. 14.)  Hostettler placed appellant under arrest and transported him back to the police station.  Before bringing appellant into the station house, Hostettler conducted a second search of appellant's person during which he recovered crack cocaine.

{¶ 6}   On September 19, 2014, a Franklin County Grand Jury indicted appellant on two counts of drug possession, in violation of R.C. 2925.11, a fifth-degree felony.  On December 16, 2014, appellant filed a motion to suppress the evidence uncovered in the warrantless search of his person.  On January 20, 2015, the trial court conducted an evidentiary hearing on the motion to suppress.  Following the presentation of evidence and the arguments of counsel, the trial court denied the motion.  The following day,

appellant entered a plea of no contest to the charges in the indictment, and the trial court convicted appellant of both counts. The trial court imposed a concurrent sentence of 24 months of community control for each conviction. The trial court issued its judgment entry on February 20, 2015.

{¶ 7} Appellant filed a notice of appeal to this court on March 24, 2015.[1]

## II. ASSIGNMENTS OF ERROR

{¶ 8} Appellant's sole assignment of error is as follows:

> The trial court erred in overruling a defense motion to suppress evidence seized in the unconstitutional search of Appellant.

## III. STANDARD OF REVIEW

{¶ 9} " 'Appellate review of a motion to suppress presents a mixed question of law and fact.' " *State v. Phillips*, 10th Dist. No. 14AP-79, 2014-Ohio-5162, ¶ 6, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. " 'When considering a motion to suppress, the trial court assumes the role of fact finder and, accordingly, is in the best position to resolve factual questions and evaluate witness credibility.' " *Id.*, quoting *Columbus v. Body*, 10th Dist. No. 11AP-609, 2012-Ohio-379, ¶ 9, citing *Burnside* at ¶ 8, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). " 'As such, an appellate court must accept the trial court's factual findings if they are supported by competent, credible evidence.' " *Id.*, quoting *Body* at ¶ 9, citing *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). " 'Accepting these facts as true, the reviewing court must then independently determine, without deference to the trial court's conclusion, whether the facts satisfy the applicable legal standard.' " *Id.*, quoting *Body* at ¶ 9, citing *Burnside* at ¶ 8, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

## IV. LEGAL ANALYSIS

{¶ 10} In his sole assignment of error, appellant contends that the trial court erred in overruling his motion to suppress evidence seized in the search of his person. We disagree.

---

[1] On May 19, 2015, this court granted appellant's App.R. 5(A) motion for leave to file a delayed appeal.

{¶ 11} The trial court determined that Hostettler lawfully obtained the evidence of drug possession following a consensual encounter with appellant during which appellant orally gave his consent to the search of his person.  Appellant argues that, under the particular circumstances of appellant's encounter with police, a reasonable person in appellant's position would not believe he was free to leave.  Appellant claims that he was "seized" by Hostettler prior to giving his oral consent to the search.  The evidence in the record does not support appellant's argument.

{¶ 12} The Fourth Amendment to the United States Constitution, as well as Article I, Section 14 of the Ohio Constitution, prohibits unreasonable searches and seizures rendering them per se unreasonable unless an exception applies.  *State v. Kinney*, 83 Ohio St.3d 85, 87 (1998).  A motion to suppress evidence challenges the warrantless search and seizure at issue as being in violation of the Fourth Amendment of the United States Constitution and Article I of the Ohio Constitution.  *State v. Lynch*, 196 Ohio App.3d 420, 2011-Ohio-5502 (8th Dist.), citing *State v. Williams*, 8th Dist. No. 81364, 2003-Ohio-2647, ¶ 7.  "The principal remedy for such a violation is the exclusion of evidence from the criminal trial of the individual whose rights have been violated."  *Id.*

{¶ 13} "The United States Supreme Court recognizes three categories of police-citizen interactions: (1) a consensual encounter, which requires no objective justification * * *; (2) a brief investigatory stop or detention, which must be supported by reasonable suspicion of criminal activity * * *; and (3) a full-scale arrest, which must be supported by probable cause."  *State v. Westover*, 10th Dist. No. 13AP-555, 2014-Ohio-1959, ¶ 14, citing *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *Terry v. Ohio*, 392 U.S. 1, 19 (1968); and *Brown v. Illinois*, 422 U.S. 590 (1975).  Thus, " 'not all personal intercourse between policemen and citizens involves "seizures" of persons.  Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred' within the meaning of the Fourth Amendment."  *Body* at ¶ 10, quoting *Terry* at 19, fn. 16.

{¶ 14} "In determining whether a particular encounter constitutes a 'seizure,' and thus implicates the Fourth Amendment, the question is whether, in view of all the circumstances surrounding [his or her] encounter [with police], a reasonable person would believe he or she was 'not free to leave' or 'not free to decline the officers' requests

or otherwise terminate the encounter.' "  *State v. McDowell*, 10th Dist. No. 13AP-229, 2013-Ohio-5300, ¶ 18, quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980); *Bostick* at 439; *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988); *Florida v. Royer*, 460 U.S. 491, 502 (1983) (plurality opinion).  "The test 'is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person.' "  *Body* at ¶ 14, quoting *California v. Hodari D.*, 499 U.S. 621, 628 (1991).  "This standard 'ensures that the scope of Fourth Amendment protection does not vary with the state of mind of the particular individual being approached.' "  *Id.*, quoting *Chesternut* at 574.

{¶ 15} In *Westover*, this court reviewed the relevant case law and described the characteristics of a consensual police encounter as follows:

> A consensual encounter occurs when the police approach a person in a public place, the police engage the person in conversation, and the person remains free not to answer or to walk away.  A consensual encounter remains consensual even if police officers ask questions, ask to see the person's identification, or ask to search the person's belongings, provided the police do not convey a message that compliance with their requests is required.  A police officer may lawfully initiate a consensual encounter without probable cause or a reasonable, articulable suspicion that an individual is currently engaged in criminal activity or is about to engage in such conduct.

(Internal citations and quotations omitted.)  *Id.* at ¶ 15.

{¶ 16} The evidence shows that Hostettler stopped the paddy wagon in a public alley as appellant approached on foot from the opposite direction. According to Hostettler, there was plenty of room in the alley for appellant to walk past the paddy wagon without changing his course.  Hostettler was familiar with appellant from prior encounters.  Hostettler rolled down the driver's side window as appellant approached and asked appellant what he was up to.  There is no evidence that Hostettler raised his voice to appellant or commanded appellant to stop.  Nevertheless, appellant stopped walking and answered Hostettler's question.

{¶ 17} At that point, Hostettler exited the driver's door of the vehicle.  Hostettler's partner remained in the paddy wagon.  When Hostettler asked appellant if he minded if

he searched him, appellant raised his arms in the air and responded, "No, go ahead." (Jan. 20, 2015 Tr. 14.) There is no evidence that Hostettler used any threats or coercion in order to prevent appellant from leaving. Nor did Hostettler place his hands on appellant at any time prior to the time appellant gave his oral consent to the search.

{¶ 18} The evidence produced at the hearing reveals nothing in Hostettler's words or actions that conveyed a message that appellant was required to answer his question and was not free to leave. On this record, a reasonable person in appellant's position would have believed that he was free not to answer Hostettler's question and to walk away. Thus, the record contains competent, credible evidence to support the trial court's finding that appellant's initial encounter with Hostettler was consensual in nature. *See*, *e.g.*, *State v. Jones*, 188 Ohio App.3d 628, 2010-Ohio-2854, ¶ 20 (10th Dist.) ("defendant's initial interaction with the police officers was consensual when the officers approached defendant's vehicle and asked him a few general questions"); *Body* at ¶ 20 (officer's conduct in pulling his cruiser behind a vehicle parked in an alley and asking the driver who had exited the vehicle to "come over here" does not constitute a seizure for purposes of the Fourth Amendment); *O'Malley v. Flint*, 652 F.3d 662, 669 (6th Cir.2011), citing Wayne R. LaFave, 4 Search & Seizure § 9.4 (4th ed.2004) (officer may rely on "the moral and instinctive pressures" of citizens to cooperate so long as the officer does not add to "those inherent pressures by engaging in conduct significantly beyond that accepted in social intercourse"). Contrary to appellant's assertion, the evidence does not support a finding that Hostettler seized appellant at any point in time prior to the time he gave his consent to a search of his person.

{¶ 19} Appellant argues, in the alternative, that his oral consent to a search of his person was not freely and voluntarily given. Once again, the record contains little or no evidentiary support for appellant's argument.

{¶ 20} The question whether a consent to search is voluntary or the product of duress or coercion, either express or implied, is a question of fact to be determined from the totality of the circumstances. *State v. Lett*, 11th Dist. No. 2008-T-0116, 2009-Ohio-2796, ¶ 32, citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 248-49 (1973); *State v. Chapman*, 97 Ohio App.3d 687, 691 (1st Dist.1994). *See also State v. Pierce*, 125 Ohio App.3d 592, 598 (10th Dist.1998). "Relevant factors for the trial court to consider in

determining whether a consent was voluntary include the following: (1) the suspect's custodial status and the length of the initial detention; (2) whether the consent was given in public or at a police station; (3) the presence of threats, promises, or coercive police procedures; (4) the words and conduct of the suspect; (5) the extent and level of the suspect's cooperation with the police; (6) the suspect's awareness of his right to refuse to consent and his status as a 'newcomer to the law'; and (7) the suspect's education and intelligence." *Lett* at ¶ 33, citing *State v. Riggins*, 1st Dist. No. C-030626, 2004-Ohio-4247, ¶ 15, citing *Schneckloth*.

{¶ 21} As noted above, appellant had not been seized by Hostettler at the time Hostettler asked for appellant's consent to search his person. Additionally, the record reveals that the consensual encounter between appellant and Hostettler had lasted a very short time prior to the time appellant gave his oral consent. There is also no evidence that Hostettler made any threats toward appellant or coerced him into giving his oral consent. He did not place his hands on appellant at any time prior to appellant's oral consent. Nor did appellant's partner leave his seat in the paddy wagon until after appellant gave his oral consent to a search. Hostettler testified that appellant was cooperative with him on this occasion as he had been in past. When Hostettler asked appellant if he minded if he searched him, appellant raised both his hands in the air and stated, "No, go ahead." (Jan. 20, 2015 Tr. 14.) On this record, a consideration of the relevant factors supports a finding that appellant gave his oral consent to a search freely and voluntarily.

{¶ 22} Appellant argues, however, that his oral consent was not voluntary because he "was never told he could refuse or that he could simply walk away." (Appellant's Brief, 9.) Appellant has not cited any case law imposing an affirmative duty on law enforcement to orally inform an individual of his or her Fourth Amendment rights in the context of a consensual encounter. Moreover, the United States Supreme Court has stated that, "[w]hile most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." *Immigration & Naturalization Serv. v. Delgado*, 466 U.S. 210, 216 (1984). *See also State v. Morgan*, 4th Dist. No. 94CA2081 (Jan. 29, 1996) ("law enforcement have no affirmative duty whatsoever to inform those with whom they have

contacts that (1) they are not required to talk to them, or (2) they are free to leave at any time").

{¶ 23} Hostettler acknowledged during his cross-examination that he was aware that appellant had the right to walk away and to refuse to answer his questions, but the record contains no direct evidence regarding appellant's level of awareness. We note that Hostettler's testimony regarding his prior encounters with appellant and the fact that appellant has a prior criminal record suggest that appellant is not "a newcomer to the law." *Lett* at ¶ 33. Appellant related that he had completed the eighth grade. Even if we were to assume that appellant was unaware that he had the right to walk away from Hostettler, appellant's lack of awareness is just one of the factors the court should consider in determining whether consent is freely and voluntarily given. *Id.*; *Riggins*; *Schneckloth.* Given the totality of the circumstances surrounding appellant's oral consent to a search of his person, we find that appellant's lack of awareness of his rights does little to bolster his claim that his consent was not voluntary. We also find that the record contains competent, credible evidence to support the trial court's finding that, under the totality of the circumstances test, appellant freely and voluntarily gave his oral consent to the search of his person.

{¶ 24} Because there is competent, credible evidence in the record to support the trial court's finding that appellant's initial encounter with Hostettler was consensual and that his subsequent oral consent to the search of his person was freely and voluntarily given, we must uphold the trial court's factual findings. Accepting the trial court's findings as true, appellant's voluntary consent to the search of his person satisfies one of the recognized exceptions to the requirement of probable cause. *See Schneckloth* at 219. *See also State v. Cundiff*, 10th Dist. No. 12AP-483, 2013-Ohio-1806, ¶ 18, citing *State v. Alihassan*, 10th Dist. No. 11AP-578, 2012-Ohio-825, ¶ 8. Having determined that the trial court did not err when it found that appellant's encounter with police was consensual and that appellant freely and voluntarily consented to a search of his person, we need not address the parties' alternative arguments based on the investigatory stop exception under *Terry* and the "good faith" exception recognized in *United States v. Leon*, 468 U.S. 897 (1984), and *State v. Wilmoth*, 22 Ohio St.3d 251 (1986).

{¶ 25} For the foregoing reasons, we hold that the trial court did not err when it denied appellant's motion to suppress.  Accordingly, appellant's sole assignment of error is overruled.

## V.  CONCLUSION

{¶ 26} Having overruled appellant's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN, P.J., and HORTON, J., concur.

_____