[Cite as *State v. Lynch*, 196 Ohio App.3d 420, 2011-Ohio-5502.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
## No.  96441

# THE STATE OF OHIO,

APPELLEE,

v.

# TYRONE LYNCH,

APPELLANT.

## JUDGMENT:
## REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-538646

**BEFORE:**   Boyle, P.J., Sweeney, J., and Jones, J.

**RELEASED AND JOURNALIZED:**   October 27, 2011

**ATTORNEYS:**

William D. Mason, Cuyahoga County Prosecuting Attorney, and Jeffrey S. Schnatter, Assistant Prosecuting Attorney, for appellee.

Jaye M. Schlachet and Eric M. Levy, for appellant.

MARY J. BOYLE, Presiding Judge.

{¶ 1} Defendant-appellant, Tyrone Lynch, appeals the trial court's denial of his motion to suppress. After reviewing the facts and pertinent law, we reverse the trial court's decision and remand the case for further proceedings.

## Procedural History and Factual Background

{¶ 2} In June 2010, Lynch was indicted on eight counts: two counts of drug possession, three counts of drug trafficking, and one count each of possessing criminal tools, carrying a concealed weapon, and having a weapon while under a disability. All the counts also included additional specifications (most were forfeiture specifications, but the drug-related counts also included a one-year firearm specification and one of the drug-trafficking counts carried a juvenile specification). Lynch moved to suppress all evidence. The following facts were presented at the suppression hearing.

{¶ 3} Detective Michael Rasberry and Detective Luther Roddy testified that as Cleveland vice detectives, they had been involved in thousands of drug arrests. On the night in question, they were investigating citizen complaints of drug activity in the area of Prince Avenue. The complaints were nearly a year old, but they testified that they had also made recent drug arrests in the area. They were driving an unmarked black Crown Victoria.

**{¶ 4}** Around midnight, as they were driving, they saw a car stopped in the middle of Prince Avenue with its brake lights on. A man, later identified to be Lynch, was standing on the driver's side of the vehicle, leaning down into the car. Detective Rasberry said that seeing this "struck a nerve" because he had "witnessed transactions in the street, transactions with vehicles, individuals hand to hand," or "some kind of transaction of drugs for currency, money." The detectives then saw the vehicle drive away, definitely exceeding the speed limit. When the car pulled away, Lynch "made a little hurry-scurry" to an SUV that was running, but legally parked on the side of the road, and got in the driver's side of the vehicle.

**{¶ 5}** At this point, the detectives activated their lights and "pulled right up on the side of the vehicle." After they activated their lights, "the seated driver was kind of jumping around the vehicle to his left of his body." That suggested to Detective Rasberry that Lynch was trying to hide drugs or weapons.

**{¶ 6}** As the detectives approached the driver's side of the vehicle, they saw a teenage girl who appeared to be high or intoxicated in the passenger seat. They identified themselves as police and asked Lynch what he had been doing in the street. Lynch replied that he was talking to his friend. At that point, the detectives asked Lynch if he had a driver's license on his person. When Lynch replied that he did not, the detectives asked him to step out of the vehicle "to ask him more questions about him not having a license." Eventually, the detectives figured out that Lynch had a suspended

driver's license and they placed him under arrest. After that, other officers searched Lynch's vehicle and discovered drugs and a gun in the car.

{¶ 7} After hearing the evidence, the trial court denied Lynch's motion to suppress. Lynch subsequently pleaded no contest to the indictment as charged. It is from this judgment that Lynch appeals, raising several Fourth Amendment issues.

## Standard of Review

{¶ 8} A motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. * * * Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. * * * Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." (Citations omitted.) Id.

## Fourth Amendment

{¶ 9} A motion to suppress evidence challenges the warrantless search and seizure at issue as being in violation of the Fourth Amendment of the United States Constitution. *State v. Williams*, 8th Dist. No. 81364, 2003-Ohio-2647, ¶ 7. The principal remedy for such a violation is the exclusion of evidence from the criminal trial of the individual whose rights have been violated. Id. Exclusion is mandatory when the

evidence is obtained as a result of an illegal search.   Id., citing *Mapp v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081.

{¶ 10} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies.  *Katz v. United States* (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576.   An investigative stop, or *Terry* stop, is a common exception to the Fourth Amendment warrant requirement.  *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.   It is well recognized that officers may briefly stop and detain an individual, without an arrest warrant and without probable cause, in order to investigate a reasonable and articulable suspicion of criminal activity. Id.; see also *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489.   "The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances" as "viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training."   *State v. Freeman* (1980), 64 Ohio St.2d 291, 414 N.E.2d 1044, syllabus; see *Bobo* at 179.

{¶ 11} The United States Supreme Court, however, has held that "not all personal intercourse between policemen and citizens involves 'seizures' of persons.   Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."   *Terry* at 19, fn. 16.

{¶ 12} In a recent case, *State v. Logan*, 8th Dist. No. 96190, 2011-Ohio-4124, ¶ 9, this court explained: "A consensual encounter occurs when the police approach a person in a public place, engage the person in conversation, and the person remains free to not answer or walk away. *State v. Jones*, 188 Ohio App.3d 628, 636, 2010-Ohio-2854, 936 N.E.2d 529, citing *Florida v. Royer* (1983), 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L .E.2d 565. * * * A consensual encounter does not implicate the Fourth Amendment or trigger its protections. Id., citing *Florida v. Bostick* (1991), 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389."

{¶ 13} These same principles also apply to citizens in motor vehicles. Generally, an officer's approach and questioning of the occupants of a parked vehicle does not constitute a seizure and does not require reasonable, articulable suspicion of criminal activity. *State v. Boys* (1998), 128 Ohio App.3d 640, 642, 716 N.E.2d 273.

{¶ 14} In his first assignment of error, Lynch argues that the police lacked a reasonable and articulable suspicion of criminal activity to justify their initial stop of him. The state maintains that the "initial stop" of Lynch was not a *Terry* stop at all, but a consensual encounter. The officers here did not simply approach Lynch while he was seated in his vehicle and begin to talk to him; they first activated their red and blue flashing lights, got out of their vehicle, and identified themselves as police. Thus, the question that we must first address is whether the officers' activation of their flashing police lights converted what would otherwise be a consensual encounter into a seizure.

Our review of the law in Ohio reveals that there is an apparent conflict between the districts on this issue.

Activation of Flashing Police Lights

{¶ 15} The state relies on *State v. Patterson*, 9th Dist. No. 23135, 2006-Ohio-5424, for the proposition that an officer's activation of overhead lights does not convert a consensual stop into a seizure.   In *Patterson*, a police officer "spotted a vehicle parked at the rear of Denny's parking lot * * * around 3:10 a.m.   The Denny's restaurant was open at the time.   The [officer] testified that the vehicle's windows were fogged up, the parking lights were on, and the car was running.   He testified that he could see a person sitting in the driver's seat of the car.   He said he believed the vehicle had been there awhile since the windows were fogged up.   The [officer] then pulled his cruiser up to the vehicle with its blue and red lights flashing."   Id. at ¶ 9.   On appeal, the defendant argued that a seizure occurred when the officer activated his overhead lights.   The Ninth District disagreed and held that " '[a] police officer does not necessarily seize the occupants of a parked vehicle through the activation of a police cruiser's overhead lights.' "   *Patterson* at ¶ 17, citing *State v. Brown* (Dec. 10, 2001), 12th Dist. No. CA2001-04-047.

{¶ 16} In *Patterson*, the Ninth District relied on *Brown*, a Twelfth District Court of Appeals case.   In *Brown*, the court determined that the defendant "was not seized within the meaning of the Fourth Amendment when [the officer] approached him in a parked car and asked questions, even though [the officer] had activated his overhead lights.   Absent

any evidence that [the officer] used some form of coercion or duress to force compliance with his request, [the defendant's] consent to the search of his vehicle was freely and voluntarily given." Id.

{¶ 17} The Eleventh District has also followed *Brown* in *State v. Rozier*, 11th Dist. No. 2009-T-0074, 2010-Ohio-1454. In *Rozier*, the court held that no seizure occurred when the officer "approached the vehicle [and] saw that it was running and that there were two occupants in the front seat. The officer stopped his cruiser about 20 feet behind the vehicle so as not to block it, and activated his overhead lights. [The officer] approached the vehicle in order to determine why its occupants were parked there." Id. at ¶ 4, 31.

{¶ 18} The *Brown* court relied on *State v. Johnston* (1993), 85 Ohio App.3d 475, 620 N.E.2d 128, a Fourth District Court of Appeals case. Our review of *Johnston* reveals that the court did not adopt a bright-line test concerning the activation of overhead police lights. In fact, we find that the holding in *Johnston* would support the opposite conclusion in the present case, namely, that a seizure did occur when the officers activated their overhead lights.

{¶ 19} In *Johnston,* the court explained:

{¶ 20} "'In order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the

person was not free to decline the officers' requests or otherwise terminate the encounter.

\* \* \*

**{¶ 21}** "Although appellant cites no authority in support of his argument on appeal, our own research reveals that several courts in other jurisdictions have held that activation of a cruiser's overhead lights converts a mere police-citizen encounter into a seizure, thus implicating the protections of the Fourth Amendment. In 3 LaFave, Search and Seizure (2 Ed.1987) 416-417, Section 9.2(h), the author states that the encounter will likely constitute a seizure where police officers use flashing lights as a show of authority. See *State v. Stroud* (1981), 30 Wash.App. 392, 634 P.2d 316; *State v. Walp* (1983), 65 Ore.App. 781, 672 P.2d 374, as cited by LaFave at fn. 269. See, also, *Ozhuwan v. State* (Alaska App.1990), 786 P.2d 918, 921.

**{¶ 22}** "We have, however, found no Ohio case either adopting or rejecting this position. In a subsequent case, the Court of Appeals of Oregon clarified its holding in *Walp*, supra, stating that 'an officer's use of overhead lights alone does not necessarily cause an encounter to be a stop.' *State v. Dubois* (1985), 75 Ore.App. 394, 398, 706 P.2d 588, 590. The court emphasized instead that in deciding whether an encounter is a stop, a court must look to the totality of the circumstances. Id." *Johnston*, 85 Ohio App.3d at 479.

**{¶ 23}** The court reasoned: "Based upon the totality of the circumstances in the case sub judice, we hold the encounter between [the officer] and appellant did not constitute a seizure. This case is distinguishable from those cited by LaFave. In those

cases, the defendant was already parked and the officer approached the defendant's parked car. In the case *sub judice*, appellant pulled into the parking lot behind the trooper and came to a stop." Id. The officer had testified, "It was dark, 2:40 in the morning and I was sitting—I pulled up right there just to turn around. And then this vehicle pulled in next to me. So, that is when I got out of my car." Id. "Under these circumstances, there was no seizure. Activation of the overhead lights did not constitute such a show of force or authority so as to convert the encounter into a seizure. * * * See LaFave, supra, at 416-417." Id.

{¶ 24} Here, the facts are more similar to the facts in the LaFave cases than to those in *Johnston*. In *Johnston*, as the court stated, it was the defendant who pulled next to the police cruiser. Id.. Here, similar to the LaFave cases (according to the *Johnston* court), Lynch was parked, and the officers approached his vehicle after activating their police lights.

{¶ 25} The concurring opinion in *Johnston* pointed out, "I concur in the judgment, but concur separately because I believe our opinion here might be misconstrued to hold that a police officer's use of overhead flashing lights does not constitute a stop. Clearly it does, and it is perceived as a stop by every driver who has been distressed to see those flashing lights in the rear window." Id. (Grey, J., concurring).

{¶ 26} In a case with facts nearly identical to those in the present case, the Second District expressly agreed with Judge Grey's concurring opinion in *State v. Little*, 2d Dist. No. 09-CA-122, 2010-Ohio-2923, ¶ 10. In *Little*, police officers were on patrol around

12:45 a.m. when they noticed "a white [SUV], with its lights out, sitting in between the storage area and the liquor store." Id. at ¶ 3. "The officers pulled in alongside the parked SUV, activating the cruiser's overhead, flashing lights as they did so. They discovered that the motor of the SUV was running, in neutral. [The defendant] was sitting in the driver's seat. A passenger was sitting in the passenger seat." Id. The Second District explained: "[T]he activation of overhead flashing lights by police officers in a marked police cruiser is a universally understood signal that a motorist being followed by a police cruiser must pull over and stop, because the police officer wants to talk to the motorist, *or that a motorist in a stationary vehicle* in the immediate vicinity of the cruiser should not leave the area, but wait, because the police officer wants to talk to the motorist." (Emphasis added.) Id. at ¶ 9.

{¶ 27} In an earlier case, the Second District held that a "motor vehicle police-citizen contact is thought to lose its consensual character and become a seizure when a police officer activates his or her emergency lights, spotlight, or siren to pull an individual over. * * * These actions amount to a show of authority and would make a reasonable person feel that he or she is required to comply by stopping. However, this general rule is not hard and fast as some courts have held that an officer's use of overhead lights alone does not necessarily cause an encounter to be a seizure. * * * This seeming inconsistency illustrates that each encounter is to be judged individually, by the totality of its circumstances." *State v. Osborne* (Dec. 13, 1995), 2d Dist. No. 15151.

{¶ 28} We agree with the concurring opinion in *Johnston* and the reasoning set forth by the Second District in *Little* and *Osborne*. While there may be limited circumstances in which the activation of police lights may not rise to the level of a stop (such as in *Johnston*, in which the defendant pulled up behind the officer), we find that in most situations, as here, that is not the case. When a police officer pulls behind or beside a parked vehicle and activates his or her flashing lights, it is clearly a seizure within the meaning of the Fourth Amendment. The person inside the vehicle understands that he or she is not free to simply pull away. Detective Rasberry even admitted that if Lynch had pulled away, they would have arrested him for failure to comply with a police directive.

{¶ 29} Based upon the totality of the circumstances in this case, the detectives were not engaging in a consensual encounter when they activated their police lights, immediately exited their vehicles, and identified themselves as "police." No reasonable person in Lynch's position would have felt free to leave. Further, we find no distinction that the detectives were in an unmarked Crown Victoria. Although the unmarked police car did not have the flashing red and blue police lights on top of the car, it still had them—one mounted on the inside and one "mounted over the rearview mirror." The detectives pulled up directly beside Lynch's vehicle and activated their lights. Lynch was certainly not free to leave. Thus, this encounter was not consensual; it was an investigative stop.

Reasonable Suspicion

{¶ 30} So the question becomes, did the detectives have an articulable, reasonable suspicion that Lynch was engaged in criminal activity—such that they were justified in approaching him to investigate. We conclude that they did not.

{¶ 31} The detectives testified that they were investigating citizen complaints of drug activity in the area but acknowledged that the complaint they were investigating was about a year old. They observed Lynch bent over talking to someone in a car. They then saw the car speed away, and saw Lynch walk back to his vehicle. They then activated their lights and effectuated a stop of Lynch. It was only then that they saw Lynch jumping around his car and reaching to the left. But by then, they had already made a stop without any particularized reason to stop him.

{¶ 32} The state argues that this court should consider other factors that suggest criminal activity was afoot—such as the late hour in a high-crime neighborhood. The state maintains that those facts, along with the detectives' experience making thousands of drug arrests—in this particular high-crime area—are enough. But this court has repeatedly held that police officers must still be able to point to specific facts to justify their conclusion that this defendant was engaged in criminal activity. *State v. Scales*, 8th Dist. No. 87023, 2006-Ohio-3946, ¶ 14. Further, it is well settled that an individual's presence in a high-drug area does not suspend the protections of the Fourth and Fourteenth Amendments. See, e.g., *State v. Simmons*, 8th Dist. No. 89309, 2007-Ohio-6636; *Scales*; *State v. Chandler* (1989), 54 Ohio App.3d 92, 97, 560 N.E.2d 832.

{¶ 33} Here, there is simply no evidence that Lynch was engaged in criminal activity. He was leaning into a car talking to someone. When the car pulled away, Lynch walked quickly back to his car and got in it. That is not enough to justify the investigative stop of him.

{¶ 34} Lynch's first assignment of error is sustained.

{¶ 35} We need not address Lynch's remaining assignments of error challenging the search of his vehicle and his wrongful arrest. Because the initial stop of Lynch was not warranted, the police had no right to ask for his driver's license or search his vehicle, and all evidence must be excluded. We therefore need not address his remaining assignments.[1]

Judgment reversed

and cause remanded.

_____

SWEENEY and JONES, JJ., concur.

---

[1] "[2] The trial court erred when it failed to grant the defendant's motion to suppress evidence based upon [an] unconstitutional search and seizure resulting from the Cleveland police detectives' wrongful arrest of the defendant as he did not operate a vehicle and therefore did not violate Cleveland City Ordinance 435.01(A).

"[3] The trial court erred when it failed to suppress evidence obtained by the Cleveland police detectives' post-arrest, warrantless search of the vehicle the defendant was arrested from which was not related to the traffic offense for which the defendant was arrested.

"[4] The trial court erred when it misinterpreted and ignored facts in denying the defendant's motion to suppress evidence which was against the manifest weight of the evidence."