EILEEN T. GALLAGHER, J.:
{¶ 1} Defendant-appellant, Michael Jackson ("Jackson"), appeals from the judgment of the Cuyahoga County Court of Common Pleas denying his motion to suppress evidence. He raises the following assignment of error for review:
The trial court erred in denying defendant-appellant's motion to suppress, and the trial court's decision must be reversed.
{¶ 2} After careful review of the record and relevant case law, we reverse the trial court's judgment and remand for proceedings consistent with this opinion.
I. Procedural and Factual History
{¶ 3} In November 2015, Jackson was named in a three-count indictment, charging him with carrying a concealed weapon in violation of R.C. 2923.12(A)(2) ; improperly handling a firearm in a motor vehicle in violation of R.C. 2923.16(B) ; and having weapons while under disability in violation of R.C. 2923.13(A)(3).
{¶ 4} In February 2016, Jackson filed a motion to suppress evidence seized from his person as a result of a traffic stop. The state filed a brief in opposition, and a suppression hearing was held in March 2016.
{¶ 5} At the suppression hearing, Detective Carl Robinson ("Det. Robinson") testified that he is a detective with the Cleveland Police, Narcotic Gang Unit. Det. Robinson explained that detectives in the Gang Unit conduct neighborhood sweeps and often make "normal stops" during their patrols. He stated:
If we see anything that looks suspicious on the streets, we stop and investigate it. Guys hanging around on the corners, in front of the stores, drug activity.
*100 Anything like that we would stop and check it out.
{¶ 6} With respect to the night in question, Det. Robinson testified that in October 2015, he was patrolling with Detective David Siefer ("Det. Siefer") in an area of Cleveland known for "heavy gang activity." At approximately 11:00 p.m., the detectives observed a suspicious vehicle parked on the side of the road. Det. Robinson testified that the vehicle was running and had three occupants inside. Based on this observation, Det. Robinson activated his overhead lights and initiated a traffic stop. Det. Robinson summarized the stop as follows:
We were in the area of 93rd and Raymond going westbound from 102 on Raymond. We got like halfway down the block a little further, we saw a car sitting with three occupants in it.
We pulled the car over. We activated our lights, got out of the car. I approached the driver. We did an investigatory stop and saw an open bottle. Detective Siefer saw the driver drinking what he thought to be a bottle of liquor.
{¶ 7} Det. Robinson testified that he asked Jackson, who was sitting in the driver's seat of the vehicle, for his driver's license. Jackson indicated that he did not have his license on him at that time. Det. Robinson testified that during this initial conversation, he observed an open bottle of liquor in the center console of Jackson's vehicle.
{¶ 8} Det. Robinson stated that Jackson appeared "fidgety and nervous" and "kept reaching towards his right" despite Det. Robinson's commands to not reach for anything. Det. Robinson testified that he asked Jackson to step out of the vehicle in order to investigate what Jackson was reaching for on his right side. Jackson complied with Det. Robinson's instruction, but removed his jacket before exiting the vehicle. Believing something inside Jackson's jacket posed a safety concern, Det. Robinson collected the jacket, patted it from the outside and discovered a loaded handgun. Jackson was arrested at that time.
{¶ 9} On cross-examination, Det. Robinson confirmed that he initiated the traffic stop "because there were three occupants sitting in [the vehicle]" in a high gang area. Det. Robinson further confirmed that the open container was observed "after" the traffic stop was initiated.
{¶ 10} At the conclusion of the hearing, the trial court denied Jackson's motion to suppress, stating, in pertinent part:
Based on the evidence presented at the suppression hearing, this court, in reviewing the totality of the circumstances, finds there is a reasonable basis for the search of both defendant's person and his jacket.
{¶ 11} In April 2016, Jackson pleaded no contest to all counts and was sentenced to a two-year term of community control sanctions.
{¶ 12} Jackson now appeals from the trial court's judgment denying his motion to suppress.
II. Law and Analysis
{¶ 13} In his sole assignment of error, Jackson argues the trial court erred in denying his motion to suppress evidence seized as a result of the traffic stop.
{¶ 14} This court reviews a decision on a suppression motion under a mixed standard of review. "In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility." State v. Curry , 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994). The reviewing court must accept the trial court's findings of fact in ruling on a *101 motion to suppress if the findings are supported by competent, credible evidence. State v. Burnside , 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. With respect to the trial court's conclusion of law, the reviewing court applies a de novo standard of review and decides whether the facts satisfy the applicable legal standard. Id. , citing State v. McNamara , 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997).
{¶ 15} The Fourth Amendment of the U.S. Constitution, which is enforceable against the states through the Due Process Clause of the Fourteenth Amendment, provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause." Mapp v. Ohio , 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Article I, Section 14 of the Ohio Constitution has language almost identical to the Fourth Amendment and affords Ohioans the same protections against unreasonable searches and seizures. State v. Robinette , 80 Ohio St.3d 234, 245, 685 N.E.2d 762 (1997).
{¶ 16} An investigative stop, as set forth in Terry v. Ohio , 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), is a common exception to the Fourth Amendment warrant requirement. Under Terry , both the stop and seizure must be supported by a reasonable suspicion of criminal activity. The state must be able to point to specific and articulable facts that reasonably suggest criminal activity "may be afoot." Terry at 9, 88 S.Ct. 1868. The existence of reasonable suspicion is determined by evaluating the totality of the circumstances, considering those circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." State v. Andrews , 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991).
{¶ 17} When considering the "totality of the circumstances," police officers are permitted to "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." United States v. Arvizu , 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). A court reviewing the officer's actions must give due weight to the officer's experience and training and must view the evidence as it would be understood by those in law enforcement. Andrews at 87-88, 565 N.E.2d 1271.
{¶ 18} However, inarticulable hunches and general suspicions are insufficient as a matter of law. State v. Smith , 8th Dist. Cuyahoga No. 89432, 2008-Ohio-2361, 2008 WL 2058530, ¶ 8. A person may not be detained, even momentarily, without reasonable, objective grounds to do so. State v. Robinette , 80 Ohio St.3d 234, 240, 685 N.E.2d 762 (1997), citing Florida v. Royer , 460 U.S. 491, 497-498, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).
{¶ 19} A traffic offense meets the requirements under Terry , constituting reasonable grounds for an investigative stop. State v. Davenport , 8th Dist. Cuyahoga No. 83487, 2004-Ohio-5020, 2004 WL 2340081, ¶ 16, citing State v. Carlson , 102 Ohio App.3d 585, 596, 657 N.E.2d 591 (9th Dist.1995).
Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or is occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging *102 in more nefarious criminal activity.
Dayton v. Erickson , 76 Ohio St.3d 3, 665 N.E.2d 1091 (1996), syllabus.
{¶ 20} In this case, Jackson argues the detectives initiated a traffic stop without any reasonable and articulable suspicion that he was engaged in criminal activity. Thus, he contends that the firearm found on his person was "the fruit of the poisonous tree" and should have been suppressed. In contrast, the state argues that the traffic stop was supported by a reasonable suspicion of criminal activity based on Det. Robinson's testimony that Det. Siefer observed Jackson drink from an open container while sitting in the driver's seat of a running vehicle. The state contends that Jackson's conduct violated R.C. 4301.64 (consumption of alcohol in a motor vehicle) and R.C. 4301.62 (open container law).
{¶ 21} Our review of Det. Robinson's testimony does not support the state's position.[1] As stated, Det. Robinson testified that he initiated the investigatory stop in this matter because he observed three individuals sitting inside a running vehicle that was parked on the side of the street in a "high gang area." While Det. Robinson testified that "Det. Siefer saw the driver drinking what he thought to be a bottle of liquor," his testimony suggests that Det. Siefer did not make this observation until after the stop was initiated. At no point did Det. Robinson expressly state or clarify that the traffic stop was initiated because Det. Siefer observed Jackson drinking from an open container. Defense counsel attempted to clarify the chronology of the detective's observations during Det. Robinson's cross-examination:
DEFENSE COUNSEL: I'm going to start with the stop of the vehicle in this case. You indicated that you pulled the car over because there were three occupants sitting in it; is that right ?
DET. ROBINSON: Yes , but we didn't actually pull it over. The car was parked.
DEFENSE COUNSEL: Okay. I think your initial testimony was that you pulled it over.
DET. ROBINSON: Okay.
DEFENSE COUNSEL: The car was parked on the side of the street?
DET. ROBINSON: Yes it was parked.
DEFENSE COUNSEL: You saw three occupants in it on Raymond Avenue, the street that has some meaning to you. Based on that you pulled the car over-you initiated the traffic stop ?
DET. ROBINSON: Yes .
DEFENSE COUNSEL: When you did that, you activated your cruiser lights?
DET. ROBINSON: Yeah.
DEFENSE COUNSEL: Okay. After you did that, there was testimony that you saw an open container in the vehicle?
DET. ROBINSON: Yes.
(Emphasis added.)
{¶ 22} In light of Det. Robinson's testimony, Jackson argues that the investigative stop was not valid because it was based solely on his presence in a high drug area, a circumstance that does not constitute a reasonable suspicion of criminal activity. We agree. Based on the testimony before this court, we find the state's case "rests solely on the character of the area." See *103 State v. Pettegrew , 8th Dist. Cuyahoga No. 91816, 2009-Ohio-4981, 2009 WL 3042040, ¶ 18. The fact that Jackson was parked
in a high-crime area "do[es] not diminish the requirements of the Fourth Amendment or its interpretation in Terry . The facts and circumstances before the officer must yet reasonably suggest that some specific criminal misconduct is afoot. That specificity requirement focuses on the criminal character of the act, not on its setting. Acts that are essentially neutral or ambiguous do not become specifically criminal in character because they occur in a high-crime area. Acts that are not specifically criminal in character do not become criminal because they are inapposite to their setting and, therefore, 'suspicious.' The setting can inform the officer's judgment, but it does not make the act criminal. In order to detain an individual to investigate for crime, some nexus between the individual and specific criminal conduct must reasonably exist and must be articulated by the officer."
State v. Sweeney , 8th Dist. Cuyahoga No. 97414, 2012-Ohio-3152, 2012 WL 2849578, ¶ 13, citing State v. Locklear , 8th Dist. Cuyahoga No. 90429, 2008-Ohio-4247, 2008 WL 3870613, ¶ 29.
{¶ 23} In our view, Det. Robinson did not articulate a sufficient basis for his reasonable suspicion that a crime was afoot at the time he initiated the investigatory stop. Rather, the record supports Jackson's position that the detectives initiated the traffic stop based on a mere hunch and their belief that Jackson's parked vehicle was suspicious based on the character of the area. There was no allegation that Jackson's vehicle was illegally parked, and there was no express testimony that the alleged violations of R.C. 4301.64 and 4301.62 were observed before the traffic stop was initiated. Accordingly, we resolve this case in favor of Jackson's Fourth Amendment rights.
{¶ 24} Having determined that the trial court erred in failing to grant Jackson's motion to suppress, Jackson's first assignment of error is sustained.
{¶ 25} Judgment reversed. Case remanded to the trial court with instructions to grant Jackson's motion to suppress.
KATHLEEN ANN KEOUGH, A.J., and MARY J. BOYLE, J., CONCUR

We note that the state did not attempt to introduce the narrative report completed by Det. Siefer at the suppression hearing. Further, Det. Siefer did not testify at the suppression hearing. See State v. Burnette , 7th Dist. Columbiana No. 09 CO 44, 2011-Ohio-6400, 2011 WL 6210685, ¶ 18.