The STATE of Ohio, Appellant,

v.

WALLACE, Appellee.

[Cite as *State v. Wallace* (2001), 145 Ohio App.3d 116.]

Court of Appeals of Ohio,
Sixth District, Huron County.

No. H–01–009.

Decided Aug. 10, 2001.

*Steve Palmer,* Law Director, and *James H. Young,* Assistant Law Director, for appellant.

*Reese M. Wineman,* for appellee.

HANDWORK, Judge.

This is an appeal by the state from a decision of the Norwalk Municipal Court to grant a motion to suppress presented by Michael Wallace. Because we find that the trial court did not err when it ruled that the officer illegally stopped Wallace before the officer had reasonable, articulable suspicion that Wallace was engaged in criminal activity, we affirm the ruling of the trial court granting Wallace's motion to suppress.

In November 2000, Wallace was arrested by an officer of the Norwalk Police Department and was charged with driving under the influence of alcohol, in violation of R.C. 4511.19(A)(3); possession of marijuana, in violation of Norwalk Municipal Ordinance 513.03(C)(2); and possession of drug paraphernalia, in violation of Norwalk Municipal Ordinance 513.12(C)(1). Wallace subsequently asked the trial court to suppress all of the evidence obtained following what he asserted was an illegal stop.

The trial court held a hearing on the motion to suppress. Only one witness was called at the hearing: the police officer who arrested Wallace.

The police officer testified that as part of his routine patrol duties, he was doing building checks at about 1:30 a.m. He noticed two persons sitting in a parked car in a parking lot that was shared by a bar and an insurance office. He testified that the parking lot was crowded and said it was neither usual nor unusual to see a parked, running car with people in the car in the parking lot. He decided "to see if everything was okay, see what they were doing."

On direct examination, the officer initially testified that he parked his cruiser just behind the running car, blocking the car from pulling out of its parking space. He got out of his cruiser and approached the car.

He testified that when the occupants of the car saw him, "they looked startled and then they ignored me." He said he asked to speak to them. In response to his request, the passenger rolled up his window. The officer said he spoke with the driver (Wallace), who explained that he was just leaving to drive his friend home. (In his later testimony, the officer explained that the driver actually rolled his window down to talk with the officer.)

Further details about the timing of events regarding the encounter were developed during cross-examination and redirect. On cross-examination, the officer was asked:

"Okay. Now after you approached the vehicle and his vehicle is blocked in by your cruiser, he wasn't free to leave; is that right?"

The officer responded: "Can you say that again?" Wallace's trial counsel then asked:

"After you approached the vehicle and he rolled the window down, he wasn't free to leave at that point, was he?"

The officer answered: "No."

On redirect, the following exchange took place between the officer and the prosecutor:

"Q. Why wasn't he free to leave? He was just physically able [*sic*] to drive away?

"A. After he rolled down his window and I asked to talk to him, *if he didn't continue to back out,* he didn't ask me to move my cruiser and I just asked him what was going on and what he was doing.

"Q. Okay. But, Officer, that's not the question Mr. Wineman really was asking you. What he was asking you was: Pursuant to your authority as a police officer, once you pulled up behind that man's vehicle, was he then free to leave?

"A. Yes." (Emphasis added.)

The officer said that when Wallace spoke, he could smell an odor of an alcoholic beverage on Wallace's breath. The officer asked whether Wallace had been drinking, and Wallace admitted that he had "a couple." The officer then noticed the odor of burned marijuana coming from inside the vehicle.

The officer asked Wallace and the passenger to put their hands on the dashboard. Another officer arrived, and both Wallace and the passenger were taken from the car they had been sitting in and were searched. The officer who made the initial contact also searched the inside of the car and found a small wooden box with suspected marijuana on one side and a "small cigarette looking pipe" on the other side. The officer seized the box and its contents.

The passenger was released. The officer then conducted field sobriety tests on Wallace. Based upon what he observed, the officer concluded that Wallace was under the influence of alcohol, and he placed Wallace under arrest.

Following the hearing, the state and Wallace both filed briefs regarding whether the trial court should grant Wallace's motion to suppress. The state argued that the encounter between Wallace and the officer was initially consensu-

al. The state acknowledged that the driver had started to put the vehicle in gear but argued that no seizure happened until the officer smelled alcohol on Wallace's breath and smelled the odor of burnt marijuana coming from inside the vehicle. Wallace argued that the encounter was not consensual and that he was restrained from the outset of the events, since the police cruiser blocked him from backing out of his parking space and leaving, rendering the entire encounter a stop.

The trial court agreed with Wallace that under the circumstances of this case, the officer had stopped Wallace without any articulable suspicion that Wallace was engaged in criminal activity. The trial court stated: "In the present matter, it is obvious that Officer Montana had restrained the liberty of Michael Wallace by a show of authority in blocking his vehicle in with a police cruiser."

The state, believing that its case was rendered so weak by the ruling on the motion to suppress that further pursuit of prosecution would be hopeless, filed a notice of appeal in this court. The state has presented four assignments of error for consideration on appeal that are:

"ERROR 1

"The trial court erred in failing to apply the appropriate test or correct law to the facts in this case of the officer's initial approach to the defendant's car and initial contact with the defendant in holding that this was an illegal stop and detention in violation of the defendant's Fourth Amendment Rights.

"ERROR 2

"The Trial Court erred in it's [sic] findings of facts by holding 'that the officer stopped the Defendant's motor vehicle by blocking his vehicle into a spot in the * * * parking lot, approached the vehicle, testified that the Defendant was not free to leave and indicated no articulable suspicion of criminal activity which would allow for the continued detention of the Defendant. Based upon that detention and based upon the complete lack of any indication of criminal activity afoot the Court finds that the stop and continued detention of the Defendant was in fact violative of the Defendant's Fourth Amendment Rights and failed to meet standards established in *Terry v. Ohio,* * * * *Scheneckloth* [sic] *v. Bustamonte,* * * * pursuant [sic] to *Wong Sun v. United States* any and all evidence gathered thereafter constituted fruit of the poisonous tree and is not admissible against the Defendant in this case.'

"ERROR 3

"The trial court erred in failing to apply the appropriate test or correct law to the facts in this case of the officers reasonable, articulable suspicion that the defendant was committing or had committed a crime.

"ERROR 4

"The trial court erred in it's [sic] finding of fact and conclusion of law that there 'was a complete lack of any indication criminal activity afoot' by the defendant and therefore the stop and detention of the defendant [were] in violation of the Defendant's Fourth Amendment Rights [and were] in error and against the manifest weight of the evidence, as the record sufficiently reflects the sufficiency of the evidence to support a finding that there was reasonable, articulable suspicion for the initial stop of the appellant/defendant's vehicle and the continued detention of the defendant for further investigation."

In support of its first assignment of error, the state argues that the trial court failed to follow the proper test for deciding whether the "arresting officer's initial approach and contact with the defendant" violated Wallace's Fourth Amendment rights. The state points to the following language found in a footnote of the United States Supreme Court case, *Terry v. Ohio* (1968), 392 U.S. 1, 19, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889, 905, at fn. 16, as the proper standard for the trial court to have applied:

"Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."

The state states that the initial encounter between the police officer and Wallace in this case was consensual and, therefore, did not trigger any of the protections of the Fourth Amendment against unreasonable search and seizure.

The state elaborates upon its argument by citing cases that contain the rule of law that no seizure occurs just because a police officer approaches an individual in a parked car and asks the individual questions. *State v. Johnston* (1993), 85 Ohio App.3d 475, 478, 620 N.E.2d 128, 129–130; and *State v. Reed* (Sept. 11, 2000), Clermont App. No. CA99–11–102, unreported, 2000 WL 1290388. The state also cites one case that it states stands for the proposition that the mere act of blocking in a citizen's car with a police cruiser does not constitute a seizure. *State v. King* (Aug. 23, 1999), Clermont App. No. CA98–12–123, unreported, 1999 WL 640248.

The state states that the interchange between the officer and Wallace did not turn into a seizure until the officer had reasonable, articulable suspicion (through the smelling of the odor of alcohol on Wallace's breath when Wallace spoke to the officer and through smelling the odor of burnt marijuana coming from inside the car) that Wallace was engaging in criminal behavior and the officer ordered Wallace and his passenger to put their hands on the dashboard in the car. The state concludes that the stop effected at that point met the standards established in *Terry v. Ohio*, 392 U.S. at 21–22, 88 S.Ct. at 1879–1881, 20 L.Ed.2d at 905–907, and that the trial court was wrong when it ruled that a stop occurred before the

officer had reasonable, articulable suspicion that Wallace was engaged in any criminal behavior.

█ The state is correct that there are three categories of interaction between individuals and police officers that are recognized by the United States Supreme Court and are applied by Ohio courts when analyzing whether Fourth Amendment protections against unreasonable search and seizure have been triggered in a case. The three categories are (1) a consensual encounter, (2) an investigatory stop, and (3) an arrest. *Willowick v. Sable* (Dec. 12, 1997), Lake App. No. 96–L–189, unreported, 1997 WL 799569. Much attention has been paid by the United States Supreme Court and by the courts in this state to the question of what test should be applied to decide whether an interaction between a police officer and an individual is a consensual encounter.

█ Some general rules have evolved over time to determine whether an encounter is consensual. First, as the state points out in its argument, the United States Supreme Court in *Terry v. Ohio*, 392 U.S. at 19, 88 S.Ct. at 1879, 20 L.Ed.2d at 905, fn. 16, indicated that an encounter does not change from consensual into a seizure unless the officer uses force or a show of authority to restrain the liberty of the person the officer has approached to question. Second, in regard to whether a restraint has occurred, courts must consider whether the reasonable, innocent person would feel free to leave or to end the encounter with the police officer. See, *e.g.*, *Florida v. Bostick* (1991), 501 U.S. 429, 439, 111 S.Ct. 2382, 2388–2389, 115 L.Ed.2d 389, 401–402. Third, the subjective intent of the officer to allow the individual to leave is irrelevant; the test is objective and is based upon whether a reasonable person would have felt free to leave. *United States v. Mendenhall* (1980), 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 509, at fn. 6. Fourth, courts must look at the totality of the circumstances of each case to decide whether, under the facts in that case, the encounter changed from consensual to a seizure that triggered Fourth Amendment rights. See, *e.g.*, *State v. Johnston*, 85 Ohio App.3d at 477–478, 620 N.E.2d at 129–130; and *State v. Washington* (2001), 144 Ohio App.3d 482, 760 N.E.2d 866. Finally, the Supreme Court of the United States has indicated that there must be both a show of authority and a submission to that authority to constitute a seizure. *California v. Hodari D.* (1991), 499 U.S. 621, 626, 111 S.Ct. 1547, 1550–1551, 113 L.Ed.2d 690, 697. Keeping all of these guidelines in mind, we have carefully considered the arguments of the parties and the facts in this case.

First, we note that the facts in this case are distinguishable from the facts contained in the cases cited by the state for the proposition that the mere act of a police officer approaching on foot to ask occupants of a parked car questions is not a seizure. In none of the cases cited by the state for that proposition did the facts include any indication that the officers parked their cruisers behind the

other individual's parked car, blocking that car from leaving, before they approached the individual to ask questions of the individual. See, *e.g., State v. Johnston*, 85 Ohio App.3d at 476, 620 N.E.2d at 128–129 (individual pulled into parking lot where state trooper was sitting in his cruiser and parked his vehicle next to the trooper's car, whereupon the trooper got out of his cruiser to see whether the individual needed his help); *State v. Reed* (Sept. 11, 2000), Clermont App. No. CA99–11–102, unreported, 2000 WL 1290388 (Officer responded to citizen's report that she saw a very drunk man leave a white pickup truck in a parking lot and go into store. Officer found parked pickup truck matching the description and walked up to the side of the truck, where he smelled a strong odor of alcohol and asked the driver to get out and perform sobriety tests.); *United States v. Castellanos* (C.A.D.C.1984), 731 F.2d 979 (Park police responded to report of a man passed out or ill·in the front seat of his parked car, approached the car after paramedics were already on the scene and had opened the car door, and asked the driver whether he was okay and for identification and registration. When driver reached under his seat, officers asked him to get out of the car, where they saw a baggie containing cocaine in plain view in his shirt pocket.); and *Lightbourne v. Florida* (Fla.1983), 438 So.2d 380 (Officer approached parked car and asked driver reasons for driver's presence there and driver's current address, and ran a background check.).

Second, we note that the case cited by the state for the proposition that the mere act of using a police cruiser to block an individual's vehicle from moving is not an automatic seizure is also distinguishable from the facts in this case. In *State v. King* (Aug. 23, 1999), Clermont App. No. CA98–12–123, unreported, 1999 WL 640248, the police officer received a report from the dispatcher about a possible drunk driver. The officer spotted a vehicle matching the broadcast description and followed it down the street. The suspected drunk driver turned into a parking lot and the officer pulled in behind the suspected drunk driver, parking his cruiser just behind the vehicle of the suspected drunk driver, blocking the vehicle. The suspected drunk driver then got out of his vehicle and approached the officer. During the ensuing conversation, the officer formed reasonable, articulable suspicion that the driver was under the influence of alcohol. *Id.* The Twelfth District Court of Appeals decided that under the totality of the circumstances in that case, no seizure had occurred. *Id.*

The driver in *State v. King* never tried to ignore or avoid the officer or to back out from the parking space after the officer stopped his cruiser behind the driver's vehicle. Instead, the driver got out of his vehicle and walked toward the officer and initiated a conversation. Accordingly, the officer's act of using his cruiser to block the suspect's vehicle in *State v. King* arguably did not rise to the level of an assertion of authority or restraint.

However, as we have previously noted in our discussion of the facts in this case, when Wallace and his passenger first saw the officer approach their parked vehicle, they looked startled and then ignored the officer. When the officer asked to talk with them, the passenger rolled up his window, and according to the officer's own testimony, Wallace actually had his vehicle in gear and was trying to back out of the parking space. Only when the officer continued to persist in his questions and failed to move his cruiser did Wallace stop backing his car and roll down his window to talk to the officer.

Under the totality of the circumstances, we conclude that no reasonable, innocent person would have believed he or she was still free to leave or to end the contact initiated by the police officer when the officer's cruiser was blocking the individual's vehicle; the officer persisted in asking questions after the one window that was rolled down in the individual's vehicle was rolled back up in response to the officer's request to talk; the individual tried to leave without responding to the officer by backing out of the parking space; and the officer failed to move his cruiser so the individual could exit the parking space and continued to approach the individual asking questions. When Wallace stopped backing his car from the parking lot and rolled down his window, he was not consensually deciding to talk to the officer: he was merely submitting to what then amounted to an assertion of authority by the officer to restrain him. See, e.g., State v. Inabnitt (1991), 76 Ohio App.3d 586, 589, 590, 602 N.E.2d 740, 742, 742–743 (individuals cannot feel free to leave when vehicle is blocked from free movement and officer is questioning individual); 4 LaFave, Search and Seizure (1996) 107–108, Section 9.3(a) (seizure when officer's action is beyond what one would expect between two private citizens, i.e., boxing in a car). We find that the trial court did not err when it ruled that the officer's actions in this case amounted to a stop or seizure at that juncture. We also agree with the trial court's conclusion that, at that time, the officer did not have any reasonable, articulable suspicion that Wallace was, or was about to be, engaged in criminal behavior. The state's first assignment of error is not well taken.

In support of its second assignment of error, the state argues that the trial court erred when it ruled that Wallace was not free to leave before the officer formed reasonable, articulable suspicion that Wallace was involved in criminal activity. The state argues that it presented the officer's unrebutted testimony that Wallace was free to leave up until the time he rolled down his window, spoke to the officer, and the officer smelled the odor of alcohol on his breath. The state states that once the officer smelled the odor of alcohol on Wallace's breath, he had reasonable, articulable suspicion to support a stop.

The state's reliance upon the subjective intent of the officer regarding whether Wallace was free to leave is misplaced. As we have already noted, the subjective

intent of the officer is not dispositive of the question of whether a suspect was seized. Rather, courts must consider the totality of the circumstances to evaluate whether a reasonable, innocent person would have felt that he or she was free to leave or to end the contact initiated by the police officer. See *United States v. Mendenhall,* 446 U.S. at 554, 100 S.Ct. at 1877, 64 L.Ed.2d at 509, fn. 6. Our discussion of the first assignment of error explains why we agree with the trial court's conclusion that under the totality of the circumstances in this case, a reasonable, innocent person would not have felt free to leave even prior to the time the officer smelled the odor of alcohol on Wallace's breath. Accordingly, for the reasons more fully explained in our discussion of the first assignment of error, we find that the state's second assignment of error is not well taken.

In support of its third and fourth assignments of error, the state argues that the officer did observe specific, articulable facts that supported his belief that Wallace had committed or was committing criminal activity. The state points again to the officer's testimony that he smelled the odor of alcohol on Wallace's breath and smelled the odor of burnt marijuana coming from inside Wallace's vehicle when Wallace spoke to him. The state states that the trial court's finding that the officer had no reasonable, articulable suspicion to support a stop is against the manifest weight of the evidence and disregards the sufficiency of the evidence in the record.

█ Once again, our discussion under the first assignment of error disposes of the arguments now presented by the state under its final two assignments of error. Our earlier agreement with the trial court that the officer lacked reasonable, articulable suspicion that Wallace was engaging in criminal activity until after the officer had already seized or stopped Wallace likewise disposes of the state's arguments in these assignments of error. The state's third and fourth assignments of error are not well taken.

The judgment of the Norwalk Municipal Court is affirmed. The state is ordered to pay the court costs of this appeal.

*Judgment affirmed.*

JAMES R. SHERCK and RICHARD W. KNEPPER, JJ., concur.