[Cite as *State v. Bergk*, 2017-Ohio-8210.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, J. |
| -vs- | : | |
| | : | |
| DOROTHY BERGK | : | Case No. 16-CA-45 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Fairfield County
                             Court of Common Pleas, Case No.
                             16-CR-250


JUDGMENT:                    Reversed and Remanded


DATE OF JUDGMENT:            October 13, 2017


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

R. KYLE WITT                              THOMAS R. ELWING
Fairfield County Prosecuting Attorney     60 West Columbus Street
                                          Pickerington, Ohio 43147
By: JOSHUA S. HORACEK
Assistant Prosecuting Attorney
239 West Main Street, Suite 101
Lancaster, Ohio 43130

*Baldwin, J.*

{¶1}   Defendant-appellant Dorothy Bergk appeals from the denial by the Fairfield County Court of Common Pleas of her Motion to Suppress. Plaintiff-appellee is the State of Ohio.

## STATEMENT OF THE FACTS AND CASE

{¶2}   On July 1, 2016, the Fairfield County Grand Jury indicted appellant on one count of possession of heroin in violation of R.C. 2925.11(A) and 2925.11(C)(6)(a), a felony of the fifth degree.

{¶3}   Appellant, on September 13, 2016, filed a Motion to Suppress. Appellant, in her motion, sought to suppress approximately 0.15 grams of heroin on the grounds that the heroin had been seized by the police during an unreasonable investigative detention and warrantless vehicle search. A hearing on the motion was held on October 14, 2016.

{¶4}   At the hearing, Officer Charles Sims of the Lancaster Police Department testified that on May 2, 2016, he was working patrol in uniform in a marked cruiser when he went to a drive-thru to get a soda for himself. When he was going through the drive-thru, an employee of the drive-thru told him that just prior to his arrival, one vehicle had rear-ended another vehicle. Officer Sims testified that the employee told him that the woman who was driving the rear vehicle seemed "just not right" and appeared to be off. Transcript at 31.   Because neither vehicle was damaged, neither of the drivers wanted anything done.

{¶5}   As Officer Sims was pulling away from the drive-thru, the same employee stopped him and told him that the vehicle that had rear-ended the other vehicle was parked on the side of the building. He testified that the employee asked him to investigate

the vehicle and that she appeared to be concerned for the well-being of the occupants. Officer Sims testified that he next pulled in behind the vehicle, which was occupied by a man and a woman, and began to run the license plate. According to Officer Sims, he pulled in behind the vehicle for purposes of officer safety. He testified that he was concerned that the driver could be under the influence of alcohol or drugs or could be having a medical issue.

{¶6} Officer Sims then made contact with the driver of the vehicle, who was appellant. He asked appellant for identification and she produced the same. Officer Sims testified that he had recognized both appellant and her passenger from a prior drug trafficking investigation in 2015. Both appellant and her passenger, in 2015, had been indicted for trafficking in cocaine, but the charges were later dismissed due to the death of the confidential informant. Appellant told the Officer that she had not been feeling well. He testified that "it seemed to me that she wasn't under the influence, necessarily, right away, and that she didn't need an emergency squad right then." Transcript at 58. He further testified that appellant did not want to make eye contact with him and that her passenger was "extremely nervous", his hands were shaking and he was bouncing his knee up and down and that he was on the phone. Transcript at 59. The Officer testified that these were good indicators that the two had something to hide.

{¶7} Shortly after providing appellant's driver's license information to dispatch, Officer Sims called for a canine unit to be dispatched. The following testimony was adduced when he was asked why he called for the unit:

{¶8} "Harold [appellant's passenger] was just,-- his nervous behavior was really, really tipping off ques (sic) to me that something was going on. So his nervous behavior,

Dorothy [appellant] not wanting to make eye contact with me, their drug history in the past, there was just too many ques (sic) and indicators there that were indicating to me that something was going on, Why were they even pulled over on the side of the building? Because she was checking a lighter, is what she said, and she was trying to change the –why wouldn't Harold just do that? There was just a lot of ques (sic) and indicators that something was going on. Something was not right with this vehicle and these people in this vehicle at that time."

**{¶9}** Transcript at 64-65.

**{¶10}** Officer Sims agreed that when he called for the canine unit, he had not received confirmation of any suspensions or warrants for appellant and was still waiting on such information from dispatch. At nine minutes and 49 seconds into the stop, dispatch informed Officer Sims that appellant was "valid, no restrictions." Transcript at 51. At nine minutes and 59 seconds into the stop, Officer Sims advised appellant and her passenger that the canine unit would be walking around the vehicle. There was evidence that at approximately ten minutes and 20 seconds into the stop, the canine conducted a sniff around the vehicle and, within seconds, alerted to the presence of narcotics. Officer Sims testified that narcotics were found in appellant's purse.

**{¶11}** On cross-examination, Officer Sims agreed that he was quickly able to make the determination that appellant was not under the influence of alcohol or drugs. He testified that she did not have an odor of alcohol on or about her person or coming from the vehicle, that her eyes were not bloodshot or watery, and that she was not slumped over. He agreed that fairly soon into the stop, he made the assessment that appellant did not have any medical issues and that he made such assessment before

calling for the canine unit. Officer Sims further testified that he was aware that the 2015 indictments against appellant and her passenger for trafficking in cocaine had been dismissed. He agreed that he allowed appellant and her passenger to drive away from the scene.

{¶12} On cross-examination, Officer Sims further testified that by the time that the canine unit started walking around the vehicle, he had received information from dispatch that appellant was valid and had no restrictions, that he was not investigating any type of DUI stop, and that he was not investigating or detaining appellant for any type of community caretaker function as a police officer. He agreed that he did not cite appellant or her passenger for any offense and that he was not investigating the previous minor automobile accident.

{¶13} At the conclusion of the hearing, the trial court denied appellant's Motion to Suppress. A Judgment Entry memorializing the trial court's decision was filed on October 28, 2016.

{¶14} Thereafter, on November 7, 2016, appellant withdrew her former not guilty plea and entered a plea of no contest to possession of heroin. The trial court found appellant guilty and, pursuant to a Judgment Entry filed on November 14, 2016, placed her on three years of community control. Appellant was also ordered to pay a fine in the amount of $500.00 and her driver's license was suspended for a period of 180 days.

{¶15} Appellant now raises the following assignments of error on appeal:

{¶16} I. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS BECAUSE THE INITIAL INVESTIGATIVE DETENTION BY OFFICER SIMS WAS UNREASONABLE UNDER THE FOURTH AMENDMENT TO THE UNITED

STATES CONSTITUTION AND SECTION 14, ARTICLE I OF THE OHIO CONSTITUTION.

{¶17} II. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS BECAUSE THE PROLONGED INVESTIGATIVE DETENTION BY OFFICER SIMS TO SUMMON A DRUG- SNIFFING CANINE AND CONDUCT A WARRANTLESS SEARCH OF APPELLANT'S AUTOMOBILE WAS UNREASONABLE UNDER THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 14, ARTICLE I OF THE OHIO CONSTITUTION.

I, II

{¶17} Appellant, in her two assignments of error, challenges the trial court denial of her Motion to Suppress.

{¶18} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning,* 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein,* 73 Ohio App.3d 486, 597 N.E.2d 1141(4th Dist.1991); *State v. Guysinger,* 86 Ohio App.3d 592, 621 N.E.2d 726(4th Dist.1993). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams,* 86 Ohio App.3d 37, 619 N.E.2d 1141 (1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue

raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry,* 95 Ohio App.3d 93, 641 N.E.2d 1172 (8th Dist.1994); *State v. Claytor,* 85 Ohio App.3d 623, 620 N.E.2d 906 (4th Dist.1993); *Guysinger, supra.* As the United States Supreme Court held in *Ornelas v. U.S.,* 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996), "[A]s a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

**{¶19}** We note that, in the case sub judice, Officer Sims testified that he pulled his cruiser behind appellant's vehicle, effectively blocking it in. Courts have generally held that, if an officer positions his cruiser so that a person cannot exit a parking lot without asking the officer to move, the officer has exhibited a show of authority constituting a seizure. *State v. Wallace,* 145 Ohio App.3d 116, 122–23, 761 N.E.2d 1143 (6th Dist. 2001); *State v. Inabnitt,* 76 Ohio App.3d 586, 589–90, 602 N.E.2d 740 ( 2nd Dist. 1991).

**{¶20}** The issue is whether or not Officer Sims had reasonable suspicion to conduct an investigatory stop. A traffic stop constitutes a seizure of a person under the Fourth Amendment of the United States Constitution. *Whren v. United States,* 517 U.S. 806, 809–810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). In *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868 (1968), the United States Supreme Court determined "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." However, for the propriety of a brief investigatory stop pursuant to *Terry,* the police officer involved "must be able to point to specific and articulable facts

which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21. Such an investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer. *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044, paragraph one of the syllabus (1980).

**{¶21}** However, courts also recognize that a community-caretaking/emergency-aid exception to the Fourth Amendment warrant requirement is necessary to allow police to respond to emergency situations where life or limb is in jeopardy. *State v. Dunn,* 131 Ohio St.3d 325, 2012-Ohio-1008, 964 N.E.2d 1037, ¶ 21. In dealing with this exception, "[t]he key issue is whether the officers 'had reasonable grounds to believe that some kind of emergency existed * * *. The officer must be able to point to specific and articulable facts, which, taken with rational inferences from those facts, reasonably warrant intrusion into protected areas.' " *State v. White,* 175 Ohio App.3d 302, 2008-Ohio-657, 886 N.E.2d 904, ¶ 17 (9th Dist.). (Citations omitted).

**{¶22}** In the case sub judice, there was testimony that an employee of the drive-thru informed Officer Sims that one vehicle had rear-ended another and that the driver of the rear vehicle, a female, seemed "just not right." Transcript at 31. The employee shortly thereafter stopped the Officer again and told him that the vehicle had not left the drive-thru property but was parked on the side of the building.   We find, based on these facts, that Officer Sims had reasonable grounds to believe that an emergency existed and that his initial investigative detention was not unreasonable.

**{¶23}** The next issue for determination is whether or not Officer Sims' prolonged detention of appellant to summon a drug-sniffing dog to conduct a warrantless search of appellant's vehicle was unreasonable. "[A]n investigative detention must be temporary

and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Indeed, "[t]he lawfulness of the initial stop will not support a fishing expedition for evidence of crime." *State v. Gonyou,* 108 Ohio App.3d 369, 372, 670 N.E.2d 1040 (6th Dist.1995). Still, "the detention of a stopped driver may continue beyond the [normal time] frame when additional facts are encountered to give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop." *State v. Batchili,* 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 15.

**{¶24}** As noted by appellant, Officer Sims, during the suppression hearing, testified that at the time the canine walked around appellant's vehicle, he had already received information that appellant was valid and had no restrictions and that he was not investigating any type of DUI stop, having determined that appellant was not under the influence of alcohol or drugs. He further testified that he was not, at that time, investigating or detaining appellant because he was concerned about her well-being or ability to drive and that he did not issue her any traffic citation. He further agreed that he was not detaining her for purpose of preparing a report related to the earlier accident. We find, based on the foregoing, that the prolonged investigative detention of appellant exceeded the purpose of the initial stop of appellant and was not based on reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop.

**{¶25}** Based on the foregoing, we find that the trial court erred in denying appellant's Motion to Suppress.

**{¶26}** Appellant's first assignment of error is, therefore, overruled, while appellant's second assignment of error is sustained.

**{¶27}** Accordingly, the judgment of the Fairfield County Court of Common Pleas is reversed and this matter is remanded for proceedings consistent with this Opinion.

By: Baldwin, J.

Earle Wise, J. concur.

Hoffman, P.J., concurs separately

*Hoffman, P.J., concurring*

**{¶28}** I concur in the majority's analysis and disposition of Appellant's second assignment of error.

**{¶29}** However, I would also sustain Appellant's first assignment of error. Officer Sims was told neither vehicle was damaged and neither of the drivers wanted anything done. The fact the drive-thru attendant described Appellant as "just not right" is insufficient to justify Appellant's detention. Although certainly grounds to approach the vehicle and question Appellant, these circumstances do not provide reasonable, articulable facts to justify a stop.