[Cite as *State v. Caplinger*, 2018-Ohio-3230.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| JACOB A. CAPLINGER | : | Case Nos.  CT2017-0087 |
| | : | CT2017-0088 |
| Defendant-Appellant | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Muskingum County
Court, Case Nos. TRC1702238 and
TRC1704238

JUDGMENT:      Reversed

DATE OF JUDGMENT:      August 10, 2018

APPEARANCES:

For Plaintiff-Appellee

GERALD V. ANDERSON II
27 North Fifth Street
P.O. Box 189
Zanesville, OH  43702-0189

For Defendant-Appellant

R. SCOTT PATTERSON
2609 Bell Street
Zanesville, OH  43701

*Wise, Earle, J.*

{¶ 1}  Defendant-Appellant, Jacob A. Caplinger, appeals the October 2, 2017 nunc pro tunc entries of the Muskingum County Court of Muskingum County, Ohio, denying his motions to suppress.  Plaintiff-Appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2}  On April 30, 2017, the Muskingum County Sheriff's Office received a citizen's report of a white Chevrolet Blazer with temporary tags parked at a gas station for thirty minutes and two individuals were rummaging through the vehicle.  The Sheriff's Office contacted the Ohio State Highway Patrol to check on the vehicle.  Trooper Samuel Hendricks was dispatched to the scene.  When he arrived at the gas station, the vehicle was gone.  He observed a white Chevrolet Blazer in the drive-thru of a McDonald's next to the gas station.  He waited for the vehicle to pull out.  When the vehicle did not exit the parking lot, Trooper Hendricks drove into the parking lot and observed the vehicle parked in a space.  He stopped behind the vehicle and activated his lights.  He approached the vehicle and observed the driver, appellant herein, and his passenger, eating ice cream. Upon speaking with appellant, Trooper Hendricks decided to conduct field sobriety tests on appellant.  As a result of the testing, Trooper Hendricks arrested appellant for physical control of a motor vehicle while under the influence in violation of R.C. 4511.194.  The prosecutor amended the charge to operating a motor vehicle while under the influence in violation of R.C. 4511.19 (Case No. TRC1702238).  Based upon the results of his urine test, appellant was charged with three additional charges under R.C. 4511.19 for operating a motor vehicle under the influence of marijuana metabolites, cocaine, and cocaine metabolites (Case No. TRC1704238).

{¶ 3}   On June 15, and August 16, 2017, appellant filed a motion to suppress in each case, respectively, claiming a warrantless seizure.   A hearing was held on September 11, 2017.  By nunc pro tunc entries filed October 2, 2017, the trial court denied the motions, finding Trooper Hendricks had probable cause to stop the vehicle and conduct a consensual encounter or an investigatory stop.

{¶ 4}   On October 18, 2017, appellant pled no contest to the charges.   By sentencing entries filed October 18, 2017, the trial court sentenced appellant to thirty days in jail.

{¶ 5}   Appellant filed an appeal in each case and this matter is now before this court for consideration.  The assignment of error is identical in each case:

I

{¶ 6}   "THE TRIAL COURT VIOLATED APPELLANT'S CONSTITUTIONAL FOURTH AMENDMENT RIGHTS BY OVERRULING APPELLANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED DURING AN INVESTIGATORY STOP OF APPELLANT WHERE THE STATE FAILED TO PRESENT SPECIFIC ARTICULABLE FACTS TO SUPPORT A REASONABLE SUSPICION OF CRIMINAL ACTIVITY."

I

{¶ 7}   In his sole assignment of error, appellant claims the trial court erred in denying his motions to suppress.  We agree.

{¶ 8}   As recently stated by the Supreme Court of Ohio in *State v. Leak,* 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 12:

"Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. In ruling on a motion to suppress, "the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.,* citing *State v. Mills,* 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). On appeal, we "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.,* citing *State v. Fanning,* 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accepting those facts as true, we must then "independently determine as a matter of law, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

{¶ 9}   As the United States Supreme Court held in *Ornelas v. U.S.,* 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 94 (1996), "…as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

{¶ 10} In keeping with the rights guaranteed under the Fourth Amendment to the United States Constitution, the United States Supreme Court has identified three different types of police-citizen encounters, consensual, investigatory, and arrest. *State v. Taylor,* 106 Ohio App.3d 741, 748-749, 667 N.E.2d 60 (2d Dist.1995), citing *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1982). We are not concerned with reviewing an arrest encounter for this case.

{¶ 11} "Encounters are consensual where the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and walk away." *Taylor* at 747, citing *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). "The Fourth Amendment guarantees are not implicated in such an encounter unless the police officer has by either physical force or show of authority restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter." *Id.* at 747-748.

{¶ 12} An investigatory stop is also known as a "*Terry* stop." In *Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court determined that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." However, for the propriety of a brief investigatory stop pursuant to *Terry*, the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21. Such an investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer. *State v. Freeman,* 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980), paragraph one of the syllabus.

{¶ 13} A suppression hearing was held on September 11, 2017. At the start of the hearing, defense counsel indicated appellant was contesting "the reasonable articulable suspicion to execute the stop." T. at 6. The state argued first, the stop was consensual

and second, Trooper Hendricks had "reasonable suspicion based upon the caller's information" to the police. *Id.*

{¶ 14} Trooper Hendricks was the sole witness for the state. He testified he received a dispatch of a "suspicious vehicle, a white Chevy Blazer with Ohio temporary tag." T. at 8. He explained what made it suspicious was that the "caller said they'd been on the lot for approximately 30 minutes and was - - there was a male and female in the vehicle rummaging through the vehicle." *Id.* The caller gave his/her name and phone number. *Id.* Trooper Hendricks did not receive any reports that any persons appeared intoxicated or under the influence. T. at 9.

{¶ 15} Trooper Hendricks arrived at the gas station and did not see the vehicle. He observed a white Chevy Blazer in the drive-thru window at the McDonald's which was next to the gas station. *Id.* He could not see if the vehicle had temporary tags. *Id.* Because the vehicle did not pull out of the parking lot, Trooper Hendricks pulled into the McDonald's parking lot. T. at 10. He observed the vehicle parked crookedly in a parking spot. *Id.* The vehicle had temporary tags. *Id.* Trooper Hendricks parked his cruiser "probably a car length" behind the vehicle, and activated his overhead lights "so they knew it was a police officer walking up" so he could conduct a "consensual encounter." T. at 11. Trooper Hendricks believed appellant could have exited the parking spot if he would have backed up and made a turn. *Id.*

{¶ 16} Trooper Hendricks made contact with the driver, appellant herein. Trooper Hendricks asked appellant for his driver's license and noted the following (T. at 12):

[Appellant had] real slow, sluggish, lethargic reactions. Had droopy eyelids. Him and his - - there was a passenger, female passenger, in the car. He starts looking for his driver's license. Doesn't produce it.

During that time, like I said, he's kind of fumbling, dropping ice cream on himself, just, like I said, basically like a drunken behavior but I didn't smell the odor of an alcoholic beverage.

{¶ 17} Trooper Hendricks asked appellant to step out of the vehicle. T. at 14. Appellant was able to exit vehicle, but his movements were "really slow and sluggish." *Id.* Trooper Hendricks did not smell the odor of an alcoholic beverage or anything else, but nevertheless conducted field sobriety tests. T. at 12, 14. The questioning stopped at this point because it was beyond the scope of the motion as appellant was contesting the stop. T. at 15.

{¶ 18} On cross-examination, Trooper Hendricks testified he was not informed of the caller's identity until after he had made the stop. T. at 17-18. After reviewing the video of the stop, Trooper Hendricks admitted he parked his cruiser closer to the vehicle than a car length, probably about five feet. T. at 23; Defendant's Exhibit 1. There was a parking block in front of the vehicle. T. at 24. Although appellant was parked crookedly in the parking spot, he was within the lines. *Id.* Trooper Hendricks admitted he did not receive any information from dispatch pertaining to appellant possibly being intoxicated or under the influence. T. at 24-25. On redirect, Trooper Hendricks opined appellant could have backed up and turned to drive away, admitting "[i]t would be tight, but, yes, he

would have been" able to drive away.  T. at 26.  However, Trooper Hendricks did not know how close appellant's vehicle was to the parking block.  T. at 27.

{¶ 19} Defense counsel argued Trooper Hendricks's testimony established "there was not reasonable articulable suspicion of any criminal activity prior to this stop.  The trooper did block the defendant's vehicle from exiting and he made a show of authority by activating his overhead lights."  T. at 25.  Defense counsel argued the stop was not a consensual encounter.  T. at 28.  The prosecutor argued the stop was in fact a consensual encounter.  T. at 29.  The prosecutor argued the following (T. at 29-30):

There is no stop because the vehicle was already stopped, and it's not a situation where an officer is pulling someone over on the side of the road.  This is a situation where a person is parked in a McDonald's parking lot which is a quasi public-type area.  The officer left room enough when he parked for the person to drive off if he wanted to.  He did not approach with his weapons drawn.  None of that was present here.  The encounter was very brief until the officer had observations to form additional reasonable suspicion to continue the encounter and turn it into a stop at that time if necessary.

{¶ 20} In its October 2, 2017 nunc pro tunc entries denying the motions to suppress, the trial court determined the state did show probable cause for Trooper Hendricks "to encounter the defendant after a citizens call advised that a White Chevy Blazer with temporary tags was parked on the lot for approximately half an hour and a

male and female was observed rummaging through the vehicle." The trial court noted the vehicle was not stopped, but already parked in a parking space and Trooper Hendricks testified appellant had room to leave. The trial court concluded the "evidence shows that the Officer clearly had probable cause to initiate the encounter with defendant whether it was a stop to investigate or a "consensual encounter." In support of its decision, the trial court cited the case of *State v. Sabo,* 6th Dist. Lucas No. L-08-1452, 2009-Ohio-6979.

{¶ 21} In a subsequent case to *Sabo, State v. Whitacker,* 6th Dist. Wood No. WD-13-061, 2014-Ohio-2220, ¶ 20, the Sixth District summarized the *Sabo* case as follows:

This court has examined when an informant's telephone call was sufficient to establish a reasonable basis to believe that an individual was driving under the influence of alcohol. *State v. Sabo,* 6th Dist. Lucas No. L-08-1452, 2009-Ohio-6979. In *Sabo,* a citizen informant contacted police with a description of the defendant from observing him in a gas station convenience store. *Id.* at ¶ 2. The informant also relayed the location, model, make, color and license plate number of his vehicle. *Id.* Most importantly, the informant gave his name and contact information and visually observed appellant going into a nearby restaurant and kept him in sight until police arrived. *Id.* Meanwhile, a second identified citizen informant telephoned after observing appellant at the drive-thru window of the restaurant. *Id.* at ¶ 3. Affirming the court's denial of appellant's motion to suppress we noted that, based upon the totality of the circumstances

which included "identified citizen informants" combined with their observations of appellant staggering, slurring his speech with "weird eyes" and the information regarding his vehicle and location, the officer had reasonable suspicion to effectuate the warrantless stop. *Id.* at ¶ 21.

{¶ 22} The *Whitacker* court distinguished *Sabo.* In *Whitacker,* an anonymous caller informed police of intoxicated females in a red vehicle containing children parked behind a bar. When the responding officer pulled into the parking lot, the red vehicle was moving. The driver stopped upon seeing the police cruiser. Two other cruisers were with the responding cruiser. None had activated their overhead lights. The responding officer parked parallel to the defendant's vehicle and spoke with the defendant. He detected an odor of alcohol and she admitted to drinking. The trial court denied the defendant's motion to dismiss, finding the stop was a consensual encounter. In reversing the trial court's decision, the *Whitacker* court found the stop to be investigatory, not consensual, noting the following at ¶ 17:

Whether an encounter is an investigatory stop or consensual encounter turns on whether a reasonable, innocent person would feel free to leave or end the encounter with police. *State v. Wallace,* 145 Ohio App.3d 116, 122, 761 N.E.2d 1143 (6th Dist.2001), citing *Florida v. Bostick,* 501 U.S. 429, 439, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). Various circumstances have led courts to conclude that an encounter may change from consensual to a prohibited seizure under the Fourth Amendment.

Such circumstances include the activation of the police cruiser's overhead lights, a known signal for the motorist to stop, *State v. Lynch,* 196 Ohio App.3d 420, 2011-Ohio-5502, 963 N.E.2d 890 (8th Dist.), where the police vehicle has physically prevented the individual from leaving, *State v. Maitland,* 9th Dist. Summit No. 25823, 2011-Ohio-6244, citing *Wallace, supra,* at 122-123, or the presence of multiple police officers, the displaying of a weapon or the use of threatening language. *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

{¶ 23} The *Whitacker* court concluded the following at ¶ 18-19:

Upon review, we find that the encounter was an investigatory stop rather than a consensual encounter. Our conclusion does not turn on whether or not the police cruiser physically blocked appellant's exit of the parking lot. * * * We are more troubled, however, by the fact that appellant's vehicle was moving when it was approached by multiple police cruisers. The video depicts that appellant stopped only after the cruisers approached. We find that a reasonable, innocent person would not feel free to leave when her vehicle is surrounded by police. Thus, this was not a consensual police encounter.

Accordingly, because we find that the officers' initial approach of the moving vehicle was an investigatory stop, it required reasonable suspicion of prohibited activity. The anonymous telephone call which prompted police

response, while specific in its description of the vehicle, passengers, and location failed to provide a reasonable basis to suspect criminal activity. When the stop is based solely on the information from an anonymous informant, it is generally insufficient to form the basis of an officer's reasonable suspicion of criminal activity. *Maitland* [*State v.,* 9th Dist. Summit No. 25823, 2011-Ohio-6244] at ¶ 9, citing *State v. Jordan,* 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N .E.2d 864, ¶ 36. In addition, because the specificity of the information, such as location and make/model of the vehicle, does not provide evidence of knowledge of the concealed criminal activity, its reliability is limited to aiding officers in locating the vehicle. *Id.* at ¶ 10, citing *Florida v. J.L.,* 529 U.S. 266, 272, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000).

{¶ 24} In distinguishing the *Sabo* case which involved identified citizen informants and specific information of criminal activity, the *Whitacker* court at ¶ 21 found "the information given by the anonymous informant was not sufficient to establish reasonable suspicion to stop appellant's vehicle."

{¶ 25} In the case sub judice, the caller was not anonymous, but identified. As noted by the Supreme Court of Ohio in *Maumee v. Weisner,* 87 Ohio St.3d 295, 300, 720 N.E.2d 507:

[A]n identified citizen informant may be highly reliable and, therefore, a strong showing as to the other indicia of reliability may be unnecessary:

"[I]f an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability—we have found rigorous scrutiny of the basis of his knowledge unnecessary." *Illinois v. Gates,* 462 U.S. at 233–234, 103 S.Ct. at 2329–2330, 76 L.Ed.2d at 545.

{¶ 26} However, as noted by the *Maumee* court at 302, "categorization of the informant as an identified citizen informant does not itself determine the outcome of this case. Instead it is one element of our totality of the circumstances review of this informant's tip, weighing in favor of the informant's reliability and veracity." The *Maumee* court went on to find that the citizen informant had relayed an eyewitness account of a crime and therefore the dispatch based on the call justified the officer's investigatory stop.

{¶ 27} The *Sabo* court found the citizen informants relayed facts giving rise to a reasonable suspicion of driving while impaired warranting an investigatory stop.

{¶ 28} In the case before us, was the stop consensual or investigatory and what did the citizen informant relay to justify the stop?

{¶ 29} When Trooper Hendricks decided to approach the vehicle, it was already stopped, parked in a parking spot in the McDonald's parking lot. He parked his cruiser behind the vehicle and activated his lights. There was a parking block in front of the vehicle preventing appellant from pulling forward. We find, as the *Whitacker* court did, that a reasonable, innocent person would not feel free to leave when his/her vehicle is "blocked" in by a police cruiser with flashing lights running, a clear "show of authority." One cannot expect a driver to start turning and maneuvering his/her vehicle out of a tight parking situation to evade speaking with an approaching officer with flashing lights in the

background. Appellee concedes in its appellate brief at 5 that it agrees with appellant's argument "that the trooper needed reasonable suspicion because he activated his lights." We find the stop was not consensual, but investigatory. The question now is whether Trooper Hendricks had specific and articulable facts, which, taken together with rational inferences from those facts, gave rise to the probability of criminal behavior to warrant the investigatory stop.

{¶ 30} Trooper Hendricks testified he understood a caller reported a vehicle parked in a gas station for approximately thirty minutes with a male and a female rummaging through the vehicle. There were no reports of breaking into the vehicle or of either person appearing to be intoxicated or under the influence and about to operate the vehicle. The only "suspicious crime" was "rummaging" through the vehicle, perhaps looking for loose change to make a purchase at the McDonald's next door.

{¶ 31} When Trooper Hendricks responded to the call, he observed the vehicle at the McDonald's drive-thru. He next observed the vehicle parked in a parking spot in the McDonald's parking lot. He did not testify to observing any criminal activity. Given the totality of the circumstances, we find Trooper Hendricks did not have a reasonable suspicion to believe appellant was involved in criminal activity to warrant the investigatory stop.

{¶ 32} Upon review, we find the trial court erred in denying appellant's motions to suppress.

{¶ 33} The sole assignment of error in each case is granted.

{¶ 34} The judgments of the Muskingum County Court of Muskingum County, Ohio are hereby reversed.

By Wise, Earle, J.

Wise, John, P.J. and

Delaney, J. concur.

EEW/db 718